Filed 7/18/16  In re Eric A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Eric A. et al., Persons Coming Under the Juvenile Court Law. | D069276 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15000D/E) |
| v. | |
| M.R., | |
| Defendant and Appellant, | |
| _____ | |
| Raul A., | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Law Offices of Rosemary Bishop and Rosemary Bishop, under appointment by the Court of Appeal, for Respondent.

M.R., who is the mother of Eric A., and daughter, A.A. (together, the children), appeals following a dispositional hearing in which the juvenile court placed the children with their noncustodial father, Raul A., in Oklahoma.[1] (Welf. & Inst. Code,[2] § 361.2.) M.R. contends the juvenile court erroneously (1) found the children would not suffer detriment by being placed with Raul; (2) failed to give adequate weight to detriment that will be caused by permanently separating the children from M.R.'s older daughters; and (3) failed to order regular visitation between M.R. and the children. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is before us a second time. The first appeal challenged the juvenile court's previous dispositional hearing and subsequent ruling that the children would suffer detriment if placed with Raul. (*In re Eric A. et al.* (Aug. 8, 2015, D067898) [nonpub. opn.].) We reversed that finding of detriment and remanded the matter to the juvenile court to make a new dispositional order based on the children's current circumstances. We take judicial notice of the record in that prior case, and do not repeat its facts here.

---

[1]    M.R.'s three older daughters from another relationship are not subjects of this appeal.

[2]    All statutory references are to the Welfare & Institutions Code unless otherwise stated.

2

On November 4, 2015, the juvenile court held a new dispositional hearing consistent with our previous opinion. A social worker testified that at the time of the hearing, she was out of contact with Raul for approximately one month. The court admitted into evidence a September 28, 2015 disposition report in which the San Diego County Health and Human Services Agency (the Agency) recommended placement of Eric (then eight years old) and A.A. (then six years old) with Raul.

The social worker concluded in the disposition report that Raul appeared committed to providing for the children: "The father seems extremely motivated to do whatever it will take to make this work, even if it means working two jobs. The father has faced a great deal of adversity in his life and has persevered and taken himself out of his unhealthy lifestyle and into another environment so that he can be responsible and dependable for his children." The social worker pointed out that Raul was ordered to participate in parenting classes, and up to late September 2015, he had not done so due to scheduling problems, but he promised to sign up for the next class. Raul stated he planned to care for the children with help from his oldest daughter as well as his girlfriend, M.L. (with whom he subsequently broke up). Raul also said his two other children from a different relationship, who were then aged 16 and nine respectively, would be living with him.

The social worker reported that in April 2015, the children and M.R.'s three older daughters had a good visit with Raul in Oklahoma. In July 2015, the social worker asked A.A. if she would like to live with Raul, and "she nodded yes." That same day, Eric stated he would prefer staying in Oklahoma with Raul, but only if he were also joined by

3

M.R.'s older daughters. The children made a second visit to Raul's Oklahoma home in July 2015. They appeared happy to meet Raul at the airport. Eric cried upon leaving Raul. A.A. did not report anything negative about the visit. The children stated they would like to return to see Raul.

Raul admitted to the social worker that he liked to drink two or three beers nightly before going to bed. The social worker concluded that "no one has reported that [Raul's] drinking impacts his behavior and shows detriment to his kids." Although Raul admitted he previously used drugs, he denied current drug use and he tested negative for drugs around July 2015.

In considering placement with Raul, the social worker acknowledged that M.R. "is opposed to the younger children going to Oklahoma and has stated that many times. She is worried because she feels that [Raul] is violent and she is also worried about how their moving would affect the older three children." The social worker also interviewed M.R.'s older daughters about the possibility of their separation from the children, and M.R.'s older daughters expressed sadness at that prospect.

Raul admitted he was involved in domestic violence with the mother of his older children, and that he went to jail for one such incident in 2002. M.R.'s older daughters recounted that when they were younger and lived with Raul in Oklahoma, M.R. was using drugs and at some point M.R. and the five children started living with M.R. in hotels. One of M.R.'s older daughters said the children were present when Raul left bruises on M.R.'s body, and even gave M.R. a black eye. One time, Raul hit M.R. until she was unconscious, and they called an ambulance. More recently, Raul told the social

4

worker he had broken up with M.L. because she was not tidy and did not watch after her children when they were at his residence. He stated the breakup caused M.L. to go "nuts" and break up things. M.L. later told the social worker that she and Raul did not argue in front of the children, and she and Raul never engaged in physical violence.

The social worker concluded: "It is also concerning that the older sibling's [*sic*] witnessed domestic violence between [Raul] and [M.R.]. At this time, there are no immediate protective issues—[Raul's] recent drug test was negative. However, [Raul] and [M.R.] have been apart for more than two years and [Raul's] most recent relationship shows no evidence of domestic violence." (Some capitalization omitted.)

The social worker made an inconclusive determination regarding the likely impact of the children's moving to Oklahoma on M.R.'s older daughters: "[T]he idea that these five siblings will be separated is devastating to think about. There are no clear answers as to whether or not [Eric and A.A.] will be negative affected [*sic*] by the separation from the older three—if I was to say that it would be detrimental to them, it would be pure speculation." Raul had stated he would like to have M.R.'s older daughters living with him if possible, or they could visit him any time they wanted.

The juvenile court also admitted into evidence an October 19, 2015 addendum report addressing the Agency's requested evaluation of Raul's home pursuant to Interstate Compact on Placement of Children Home Evaluation (ICPC) (Fam. Code, § 7900 et seq.), which the Oklahoma authorities denied based on findings that Raul was having financial difficulties, having lost one of his two jobs because his vehicle was in disrepair and he could not afford to repair it; Raul was living in a mobile home that proved to be

5

too expensive, and he was seeking a cheaper residence; Raul, who is not a United States citizen, admitted being deported from the United States ten times; and Raul's criminal history included evading arrest, domestic violence and vandalism.

The Agency addressed each point of the ICPC denial: (1) Raul's job loss was only temporary, and he was back to working two jobs. Eric and A.A. had stated that during their Oklahoma visit they always had food and "there were no reports that they did not have all of their needs met." (2) Referring to Raul's housing arrangement, the Agency stated it "does not consider a small space as being detrimental or a reason not to place the children with [Raul]. In fact, Eric and [A.A.] currently live with a relative in a one bedroom apartment with six other people." (3) The Agency does not regard "whether or not [Raul] is legal in the United States as a protective issue and [did] not find that would be detrimental to the children." (4) The Agency had no current evidence that Raul was engaged in any type of criminal behavior or had any current criminal history. His last known crime was committed at least seven years ago.

In ruling on detriment, the court acknowledged the children's move to Oklahoma would negatively affect M.R.'s older daughters: "Here, it is very clear that there's going to be loss if the court were to place Eric and [A.A] with their father, and it would be disproportionate. The siblings would experience far greater loss than Eric and [A.A.] There's no way of getting around that. They're older. They've had [to assume] responsibilities beyond their years and beyond what we would want children to do in a setting." However, the juvenile court added that under section 361.2, the appropriate inquiry "must be detriment to the physical and emotional health of the child or the child's

6

safety or protection."  The juvenile court pointed out that the social worker had thoroughly and appropriately rebutted the claims raised in the denial of the ICPC:  "[T]he two children have been to Oklahoma on two separate occasions.  All of the concerns that were referenced in the ICPC were actually for lack of a better term, field tested on those two visits.  The crowded nature of the arrangements there, the father's work schedule, the potential immigration issues as well as the relationship issues."

The juvenile court adjudged the children dependents of the court under section 361.2, and removed custody from M.R.  It subsequently authorized a visit between the children and M.R. before the children's departure to Oklahoma.  It also ruled that all orders not in conflict should remain in effect.

## DISCUSSION

M.R. contends the court's finding of no detriment to the children if they lived with Raul was unsupported by substantial evidence.  She claims Raul was not a competent parent as shown by (1) incidents of domestic violence she suffered at his hands, following which the children saw her with a black eye; (2) Raul's current daily alcohol use; (3) Oklahoma's denial of the ICPC home study; and (4) Raul's recent break up with M.L., and his unstable job situation and home life.

"When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a [noncustodial] parent . . . who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)

7

Section 361.2, subdivision (a) evidences "the Legislative preference for placement with [the noncustodial] parent." (*In re Austin P*. (2004) 118 Cal.App.4th 1124, 1132.)

As the party opposing placement with the noncustodial parent, M.R. bore the burden before the juvenile court of showing detriment to the " 'emotional well-being of the child' " under section 361.2, subdivision (a) "by clear and convincing evidence that the child[ren] will be harmed if [Raul were] given custody." (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402; see *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700; *In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570.) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.)

On appeal, our role is limited, and we apply the substantial evidence standard of review. (*In re Luke M*. (2003) 107 Cal.App.4th 1412, 1426.) We do not reweigh evidence or reassess the credibility of witnesses; instead, we review the record for evidence of reasonable, credible and solid value such that a reasonable trier of fact could find as the juvenile court did. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979.) Here, the court considered the evidence, indicating it had reviewed all of the reports before finding there would not be detriment.

M.R. contends the children would suffer detriment in part because in the past Raul had engaged in domestic violence against her. Without minimizing that concern, and in focusing on current findings, the Agency responded that during the most recent breakup between Raul and M.L., "there were no children present for [M.L.'s] outburst. . . . More importantly, the children were not exposed to any domestic violence during their two

8

extended visits with [Raul] in Oklahoma."  The Agency also concluded that Raul had not been criminally charged in the previous seven years.  We cannot say the Agency's response was unsupported by the evidence.

Regarding M.R.'s objection to Raul's alcohol use, the evidence shows that during the children's two visits to Oklahoma, Raul's admitted alcohol use was not a detriment to the children.  He cared for them, provided for them, and they reported having a good time.  Furthermore, in July 2015, Raul tested negative for drugs, including for a metabolite of alcohol.  We reach the same conclusion as another court in a similar case: "Not only did the petition in this case not include any allegations of substance abuse or domestic violence against father, there was no evidence of any recent much less current, domestic violence by father."  (*In re C.M., supra,* 232 Cal.App.4th 1394, 1404.)

M.R. also claims the juvenile court failed to give adequate weight to the detriment that would be caused by its decision to separate the children from her older daughters, with whom they shared strong bonds.  While a child's wishes, sibling bonds and a child's relationship with the noncustodial parent may be considered by the juvenile court in determining whether placement of a dependent child with a noncustodial, nonoffending parent would be detrimental to the child's physical or emotional well-being, none of these factors is determinative.  (*In re C.M., supra,* 232 Cal.App.4th at p. 1403.)

Here, the social worker in her report specifically addressed this issue and could not say it would be detrimental for the children to be separated from M.R.'s older daughters.  The social worker stated that any finding of detriment on this issue would be merely speculative.  The juvenile court did not err by relying on the social worker's report.

9

The juvenile court could not conclude by clear and convincing evidence that there would be detriment to the children by placing them with Raul. It found any detriment would be greater for M.R.'s older daughters than the children, and added: "What's significant in this case is that there are two separate blended families. There's the blended family here [in California], and the blended family in Oklahoma, because the father has three other children. So while we may be talking about the potential disruption for Eric and [A.A.] in this blended family in California, you can't discount the fact that there is immense potential for excitement of creating new relationships, the joy of new relationships, the security of not just new sibling contacts, but the concomitant of expanding the sibling base." We conclude that substantial evidence supports the trial court's determination. (Accord, *In re K.B., supra,* 239 Cal.App.4th at p. 980 [although child loved his maternal family, no facts to suggest moving to Virginia presented a high probability of devastating emotional impact].) We point out that Raul expressed an openness to visits by M.R.'s older daughters and nothing precludes the children from maintaining contact with M.R.'s older daughters by telephone and social media.

In sum, M.R. did not meet her burden of proof. Her objections are similar to those raised in the denial of the ICPC, which the Agency rebutted. In any event, as M.R. acknowledges, " 'compliance with the ICPC is not required for placement with an out-of-state parent.' " (*In Re. Z.K.* (2011) 201 Cal.App.4th 51, 66; *In re John M., supra,* 141 Cal.App.4th at p. 1575.)

Finally, M.R. argues the court should have ordered visitation with the children. The juvenile court had authorized a visit between M.R. and the children before they left

10

for Oklahoma, and there is no record M.R. had requested further visitation. As the Agency points out, on November 19, 2015, the juvenile court had ordered that "all prior orders not in conflict remain in full force and effect." Therefore, as the Agency puts it, "[M.R.], the father, the children and the Agency can manage the logistical details of how such visitation will take place, now that the children are placed with the father. There is no evidence that is already not taking place." We conclude that M.R.'s visitation request is best resolved between the parties and the Agency and, if necessary, by recourse to the juvenile court.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

11