Filed 8/16/16  In re Mauricio V. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re MAURICIO V., et al., Persons Coming Under the Juvenile Court Law. | B270046 |
| | (Los Angeles County Super. Ct. No. CK11791) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RUBEN V., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Brian Mahler, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

Incarcerated noncustodial father Ruben V. appeals from the juvenile court's denial of his request that his three dependent children be placed in his custody. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Children Mauricio V., Ruben V., and P.V. came to the attention of the Department of Children and Family Services in 2015 after reports that their mother, G.M. (Mother), neglected them and left them without appropriate supervision. Noncustodial father Ruben V. (Father) was incarcerated in another state. The children were detained.

The family had been involved with DCFS in the past. In 2010 Father was alleged to have threatened to kill Mother while the family was in a car, leading Mother to jump from the car when Father stopped at a stoplight so that she could call the police. The children told DCFS that Father had threatened to kill Mother, but the parents denied it. The two older children reported that they had seen their parents fighting and hitting each other. DCFS determined that the allegation of emotional abuse was substantiated.

In 2013 DCFS investigated allegations that the parents were neglectful and emotionally abusive to the children. Mother had called 911 and reported that Father was enraged and had threatened to strangle her. During the call, Father could be heard in the background threatening to use a machete against law enforcement. Law enforcement told DCFS that Father sounded violent and mentally or emotionally unstable. Father fled the scene when he heard sirens. Mother told officers that Father had been violent with her on four or five occasions and that she had photographs of the bruises he had caused on her; she had not made a police report because she feared Father's retaliation. DCFS concluded that the allegations of general neglect by Father were substantiated and a voluntary family maintenance case was opened. The family received services for a year. Mother participated minimally in recommended programs. Father was incarcerated and out of the home during this time.

Father had an extensive criminal history, including felony convictions for possession of a controlled substance (2001), burglary (2005), sale of marijuana (2008),

2

making a criminal threat (2013), possession of a controlled substance (2013, 2014), reckless evasion of police (2014), and resisting an executive officer (2014).

Maternal aunt Margarita R. volunteered to have the children placed with her. DCFS concluded that placement with Margarita R. was not in the best interest of the children because Margarita R.'s criminal history included willful cruelty to a child (Pen. Code, § 273a); DCFS later noted a history of "alien smuggling." At the court's direction, DCFS continued to assess Margarita R. for placement and sought a waiver of her criminal history.

On August 27, 2015, the juvenile court sustained allegations of neglect by Mother pursuant to Welfare and Institutions Code[1] section 300, subdivision (b). The court continued the disposition hearing so the children could be present and the criminal waiver process could continue. DCFS advised the court that a number of documents were still missing from Margarita R.'s waiver paperwork and that she had several outstanding warrants that required resolution before moving forward with the waiver.

At the disposition hearing in December 2015, the court declared the children dependents and removed them from Mother's custody. Father requested that the children be placed in his custody with the plan that Margarita R. would care for the children until his release from prison between February and August 2016. At the hearing, DCFS presented Father's history of felony convictions for a number of crimes, including criminal threats and multiple drug offenses, as well as Father's two prior DCFS referrals for domestic violence. The court noted that while Father was nonoffending in the present proceeding, he had a "quite troubling" history of DCFS referrals, a conviction for violence, a criminal history involving drugs, and what it described as "failed voluntary family maintenance efforts." The court also observed in the course of the hearing that Father "certainly is not parenting the children now and hasn't been for quite a long time since he's been in custody." The court found by clear and convincing evidence that placement with Father would be detrimental to the children's safety, protection, or

---

[1] All further statutory references are to the Welfare and Institutions Code.

3

physical or emotional well-being. It also concluded that Father's plan that Margarita R. would provide care for the children while he was incarcerated was not appropriate because no criminal waiver had yet been issued for her; because Margarita R. had been inconsistent in visitation; and because she was not present in court to demonstrate her willingness and ability to care for the children. The court further expressed concern that Margarita R. may have made false allegations that the children were being mistreated in their foster care placement. The court stated that it remained open to the possibility that placement with Margarita R. could be appropriate in the future if a criminal waiver were ultimately issued. The court placed the children in DCFS custody and gave DCFS discretion to place the children with Margarita R. if she obtained a waiver. Father appeals.

## DISCUSSION

When a child is removed from parental custody, if a noncustodial parent requests custody, the juvenile court must place the child with that parent unless it finds by clear and convincing evidence that placement with him or her would be detrimental to the safety, protection, or physical or emotional well-being of the child. (§ 361.2, subd. (a); *In re Marquis D*. (1995) 38 Cal.App.4th 1813, 1829.) The assessment of detriment "requires the court [to] weigh all relevant factors to determine if the child will suffer net harm." (*In re Luke M*. (2003) 107 Cal.App.4th 1412, 1425.) Relevant factors when the noncustodial parent is incarcerated include the child's relationship with the noncustodial parent, sibling bonds, the child's needs and wishes, the length of the parent's incarceration, and the parent's ability to make suitable arrangements for the care of the child. (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402; *In re Noe F.* (2013) 213 Cal.App.4th 358, 368.) We review a detriment finding under section 361.2, subdivision (a) for substantial evidence. (*In re Luke M.*, at p. 1426.)

Substantial evidence supported the juvenile court's finding that placing the children with Father would be detrimental. At the time of the jurisdictional and dispositional hearings, the children did not have an active relationship with Father. He

4

had been absent from the home for a substantial period of time due to incarceration, and the children had no contact with him. None of the children expressed a desire to live with him. When Father was in the home, the children were exposed to domestic violence. Although Father contends that the "genesis" for Father's two prior DCFS referrals was not domestic violence, apparently because the allegations were categorized as emotional abuse in one case and general neglect and emotional abuse in the other, even a cursory review of the record demonstrates that these incidents involved domestic violence. In 2010, DCFS became involved with the family after the children witnessed their parents physically fight and Father threatened to kill Mother. In 2013, the family was referred to DCFS again due to allegations that Father threatened to strangle Mother.

Father's criminal history, including drug offenses and a conviction for making criminal threats, was also well-documented in the record. There was no evidence that Father had ever participated in anger management, substance abuse, or parenting programs to address his issues, and therefore there was no reason to believe that Father had made any progress in addressing the issues that had resulted in his criminal convictions and referrals to DCFS.

Father's plan to place the children in Margarita R.'s care while he was incarcerated was unsuitable. Margarita R.'s criminal history included an arrest for willful cruelty to a child and multiple outstanding warrants, and DCFS had not yet been able to obtain a waiver. Margarita R. had engaged in troubling behavior during the dependency proceedings. She had made allegations, later determined to be false, about a foster parent, and she was inconsistent in her visitation. DCFS described her as "dishonest" with both DCFS and the foster parents, and her visits had been modified from unmonitored to monitored as a result. The juvenile court reasonably concluded that placing the children in the care of Margarita R. at that time was not a suitable plan. (See *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700-701 [dependency court may consider placing a child with a noncustodial, incarcerated parent when the parent seeks custody of the child, is able to make appropriate arrangements for care by "a suitable caretaker" for

the incarceration period, and custody of the noncustodial parent would not be otherwise detrimental to the child].)

Father is correct that the juvenile court mischaracterized his history with voluntary family maintenance services when it described prior "failed" voluntary family maintenance efforts, but this factual error does not undermine the court's conclusion, on the totality of the circumstances, that it would be detrimental to place the children in the custody of a father with whom they had no contact, who had a child welfare and criminal history that involved domestic violence and drugs, and who had not made suitable arrangements for their care. The court's determination was supported by substantial evidence.[2]

## DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[2] Without requesting relief, Father asserts in a footnote in his opening brief that the juvenile court's minute order at the disposition contained a no contact order that the court did not make at the hearing. We do not read the minute order as Father does, given that it specified that Father was to have "no contact with the child and is not to exercise any care, custody or control of or over the children, except, as provided in this order," and then clearly provided for contact between Father and the children by means of monitored visitation.

6