Filed 11/19/20  In re C.S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | B299977 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ERICA M.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP03694A) |

APPEAL from an order of the Superior Court of Los Angeles County, Jana M. Seng, Judge.  Reversed.

Patricia G. Bell, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

———————————

After declaring 14-year-old C.S. a dependent because his father inappropriately disciplined him, the court removed the child from the custody of his nonoffending, noncustodial mother, Erica M. (mother). Mother appeals contending that the court was not statutorily obligated to remove the child from her custody, and that the findings underpinning the removal order were not supported by substantial evidence. We reverse because the evidence does not support a finding by clear and convincing evidence that placing C.S. with mother would harm the child.

## BACKGROUND

C.S. lived with father and paternal grandparents. He believed that mother died when he was born. However, father told the social worker that C.S. lived with mother in prison for the first six months of his life. The child was sent to live with maternal grandmother when mother was moved to a federal prison that prohibited children. Father took C.S. around 2010. Mother's burglary conviction the year C.S. was born is her last recorded criminal conviction. She was released from prison in 2012 and began searching for C.S., but the paternal grandparents told her that father and the child had moved out of state. C.S. had no recollection of mother and no contact with or knowledge of his maternal family. He never asked father about mother because the child did not want to cry in front of father.

Mother's whereabouts were unknown when the Department of Children and Family Services (DCFS) filed a

2

petition alleging that father physically abused C.S. The court detained the child and ordered him placed with his paternal grandparents on the condition that father leave the house and only have monitored contact with the child.

DCFS located mother who appeared at the July 8, 2019 adjudication hearing and asked for custody. The juvenile court sustained the petition under Welfare and Institutions Code[1] section 300, subdivision (b) and declared that mother was nonoffending. The court granted mother unmonitored visitation three times a week for three hours per visit, and allowed father to return to the family home pending the disposition hearing. Mother began visiting with C.S. the day of the adjudication hearing.

For the disposition, DCFS recommended that C.S. return to father's custody on the condition that the two reside with paternal grandparents. As for mother, DCFS recommended against her having custody because she had not seen the child since he was an infant. DCFS opined that it was not "appropriate" to grant mother custody until the two developed a relationship as the child had only just reconnected with her and visits had only begun two weeks earlier. C.S. wanted their visits to last longer, but he was not yet ready to spend full days with her. He also wanted conjoint counseling with mother as the two had yet to build a bond.

At the July 25, 2019 disposition hearing, the juvenile court stated it wanted to "revert back to what it was prior to the petition having been filed with this court." Accordingly, the court ordered C.S. returned to father's custody provided they remain

---

[1] All further statutory references are to the Welfare and Institutions Code.

3

with the paternal grandparents, and ordered family maintenance for father.

DCFS then asked the court to make findings under section 361.2 of the detriment necessary to remove C.S. from mother as mother was noncustodial and nonoffending. DCFS reasoned that placing the child with mother would be detrimental to his emotional wellbeing because they had no relationship. The court did not believe that it was required to make a finding pursuant to section 361.2, with respect to the noncustodial parent, because it was not removing the child from the custodial parent. However, as DCFS and counsel for C.S. insisted, the court found it was in the child's best interest to remain detained from mother. It found that mother's lack of a relationship with C.S., given she had not been in his life for 12 years, and the absence of an assessment of mother's ability to protect the child, were detrimental to him. The court then removed C.S. from mother's custody based on the finding by clear and convincing evidence that there was a substantial danger to the child's wellbeing if returned home and that he could not be protected without his removal from mother's custody. Mother's appeal ensued.

## DISCUSSION

" ' "A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood." [Citation.]' [Citation.] A nonoffending parent has a constitutionally protected interest in assuming physical custody of his or her dependent child which may not be disturbed ' "in the absence of clear and convincing evidence that the parent's choices

4

will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' " ' " (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1400.) The "trial court's decision at the dispositional stage is critical to all further proceedings. Should the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.)

DCFS acknowledges that section 361.2 does not apply to this case. By its language, section 361.2, subdivision (a) applies *if* a "court orders removal of a child pursuant to Section 361." The juvenile court did not remove C.S. from father.

However, section 361, subdivision (d), enacted effective 2018, does authorize the juvenile court to take a child from the custody of a noncustodial parent, provided the court finds "*clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child* or otherwise exercise the parent's . . . right to physical custody, and there are *no reasonable means by which the child's* physical and *emotional health can be protected without removing the child from the child's parent's . . . physical custody*." (Italics added.) Section 361, subdivision (d) authorized the juvenile court here to remove C.S. from mother's custody. Although the court did not specify it was following section 361, subdivision (d), it ended the disposition hearing by making the requisite finding under that statute using the italicized words above.

Mother contends, even if the court properly proceeded under section 361, subdivision (d), that the evidence did not support the detriment finding. We agree.

When, as here, we are "reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996, 1011.) "The nonoffending parent does not have to prove lack of detriment. Rather, the party opposing placement with a nonoffending parent has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*In re C.M.*, *supra*, 232 Cal.App.4th at p. 1402.)

DCFS cites the following evidence as showing a high probability that placing C.S. with mother would be detrimental to his emotional wellbeing: The child believed that mother was dead and knew nothing about her or her family; he never talked about mother with father because he knew it would make him sad and cry and he did not want to cry in front of father; C.S. did not "feel good at all not knowing about her." DCFS adds that although visits between mother and son are going well, the two had only recently met and begun visitation and C.S.'s own attorney stated that the child was not yet ready for full day visits and wanted conjoint counseling. The juvenile court added as a factor that DCFS had not yet assessed mother's ability to protect C.S.

A child's wishes and lack of contact with the noncustodial parent are factors that may be considered by a juvenile court in determining whether placement of a dependent child with a noncustodial, nonoffending parent would be detrimental to the child's emotional wellbeing, but they are not determinative. (*In*

6

*re C.M.*, *supra*, 232 Cal.App.4th at p. 1402; see *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262; *In re John M.* (2006) 141 Cal.App.4th 1564, 1570.) Although these cases were decided under section 361.2, subdivision (a) because the children there were being removed from the offending parent, the same standard applies when removing a child under section 361, subdivision (d). The reason is that both statutes govern a child's removal from a noncustodial parent and both statutes require a finding of detriment by clear and convincing evidence before removing the child (§ 361, subd. (d); *In re C.M.*, at p. 1401).

Here, DCFS failed to carry its burden. The child's desire to bond with mother first, the lack of a relationship between the two, and the absence of counseling to date do not make it highly probable that mother posed a substantial danger to the child's emotional wellbeing. Mother is nonoffending. There is no evidence that she is financially or emotionally unstable. She looked for C.S. when she was released, and was lied to about his whereabouts, and so her lack of a relationship with the child was not her doing; it was father's. DCFS's failure to assess mother's ability to protect the child is likewise not the result of mother's conduct. In sum, the record shows only that the court has no information on which to assess detriment. But, the lack of evidence does not amount to a high probability of detriment. Even the trial court seemed to agree that removal was unnecessary, as it noted in the middle of making it, that the finding "does not even make sense." The court then ordered unmonitored visitation with mother while empowering DCFS to allow overnights. There is insufficient evidence to support the juvenile court's finding that it was highly probable that C.S. would be harmed if mother were given custody.

To be sure, the juvenile court was not without tools in a situation such as this where DCFS has not yet assessed mother's ability to care for and protect the child if he were placed in her custody. Once the court adjudges a child a dependent under section 300, it is empowered to "limit the control to be exercised over the dependent child by any parent" (§ 361, subd. (a)) and to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a dependent child (§ 362, subd. (a)) while it awaits DCFS's assessment of mother's stability, safety, and protectiveness.

## DISPOSITION

The order is reversed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:



LAVIN, Acting P. J.



EGERTON, J.