Filed 8/10/21  In re E.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | D078758 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J519828C) |
| Plaintiff and Respondent, | |
| v. | |
| W.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Vacated, in part, and remanded with directions.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

This is the third appeal related to dependency proceedings for this family.  W.M. (Father) appeals a February 17, 2021 order from a contested adjudication and disposition hearing as to minor E.M. in which the juvenile court found placement of E.M. with Father as a noncustodial parent would be detrimental.  He contends the juvenile court erred in basing its placement determination on an earlier finding at a January 4, 2021 hearing that Father sexually abused E.M.'s siblings (D.M. and S.M.) in which the juvenile court applied the incorrect standard of proof.

In the first of two prior related appeals, we agreed that the juvenile court erred in its January 4, 2021 orders granting the Welfare and Institutions Code section 388[1] supplemental petitions of the San Diego County Health and Human Services Agency (Agency) for change of the siblings' placement because the court applied the incorrect legal standard of proof in deciding those petitions and removing the siblings from Father's physical custody in violation of section 361, subdivision (c)'s requirements. We reversed the January 4, 2021 orders and remanded with directions for the juvenile court to conduct a new hearing on the section 388 petitions and apply the correct legal standard of proof in deciding whether to grant or deny the petitions based on the facts existing at the time of the further proceedings.  (*In re D.M.* (July 16, 2021, D078474) [nonpub. opn.] (*D.M.*), pp. 25-26.)  In the second appeal, we concluded the juvenile court's subsequent February 17, 2021 orders granting section 387 petitions as to the siblings were also erroneous because they were based on its January 4, 2021 findings and orders.  We issued a peremptory writ of mandate directing the court to vacate its February 17, 2021 orders as to the siblings and to enter

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

new orders consistent with our two opinions. (*W.M. v. Superior Court* (July 16, 2021, D078633) [nonpub. opn.] (*W.M.*), p. 11.)

The order Father challenges in this appeal as to E.M. is from the same combined February 17, 2021 hearing as the section 387 petitions for removal of the siblings. Because the court's findings and orders were so interrelated and the court relied on its earlier findings regarding the siblings to determine placement of E.M. with Father would be detrimental, that portion of the February 17, 2021 order should also be vacated. We remand the matter with directions for the juvenile court to vacate the portion of the order denying placement of E.M. with Father and to conduct a new hearing on the issue applying the correct legal standard of proof based on the facts existing at the time of the further proceedings. (*D.M.*, *supra*, D078474, at pp. 25-26.)

BACKGROUND[2]

When E.M. was born, the family had an open family maintenance case for E.M.'s older siblings who were removed from the parents in August 2018 after Mother left the children unattended at a homeless shelter and returned intoxicated. The juvenile court returned placement of the siblings to the parents in October 2019 after the parents showed progress in their case plans.

In January 2020, however, the Agency filed section 388 petitions to modify the October 2019 orders placing the children with Mother and Father because Mother alleged that Father sexually abused the older siblings in December 2019, shortly after E.M. was born. Mother, who was sleeping in

_____

[2]    We provide an abbreviated summary of the factual background of this family's dependency proceedings for context as to E.M. For a more extensive discussion, we refer the reader to our opinions in *D.M.*, *supra*, D078474, at pages 2 through 10 and *W.M.*, *supra*, D078633, at pages 3 through 7.

3

the living room of the family's apartment, awoke to see Father and one of the siblings playing video games while sitting on a bed. The child's hand was inside the child's pants in the genital area and Father was rubbing and grabbing the child's genital area over the child's clothing. Father laughed when Mother confronted Father, and the child jumped off the bed and said the child was not doing anything wrong. Father left the residence when Mother called the police. Mother said she had noticed a change in the child's behavior, including genital touching and appearing timid and upset when the child was alone with Father.

In an interview, the child said Father touched the child's private area while the child watched Father play video games. The child said Father took the siblings to get presents after the incident. The child did not think the other sibling saw the touching. The child said Father sometimes touched the child's "booty." The other sibling reported that Father touched both siblings' "pee-pee" and "booty" with his hand while they wore clothes. The child said Father thought Mother was sleeping, but Mother saw him.

The court made a prima facie finding on the section 388 petitions and ordered Father not to have contact with the siblings pending a contested disposition. The three children were placed with Mother.

However, in October 2020, Mother called her social worker stating she felt overwhelmed and wanted to drink. Mother was running out of welfare assistance, she had no support to watch the children, and she felt she could not meet the children's basic needs. She wanted to relinquish the children, saying they deserved to be with families who could provide them a stable home.

Thereafter, the Agency filed a petition on October 7, 2020 detaining infant E.M. and stating Mother was destitute and could no longer care for her

children.  Mother requested the children be placed in foster care.  The Agency expressed concern that Mother would no longer care for the children and that Father could sexually abuse E.M. or use substances if the child was left in his care.  Mother told her therapist that Father was a "sexual predator" who had done "horrible things" to her and to other little girls "on the street."  She said she caught Father sexually abusing the older siblings and that he had shown them how to masturbate.

Father had not completed services for the sexual abuse case regarding the older children nor had he addressed or gained insight into the protective issue.  Father self-discharged from a sexual abuse therapy group.  There were no relatives to consider for placement of E.M.  Mother preferred the children be placed with strangers in a two-parent household who work and do not have to "struggle."

Father had supervised weekly visits with the older siblings, but he did not have visits with E.M. due to the open case regarding the siblings.  Father was waiting to seek visits with E.M. from the family court until the child welfare services case was closed because he thought the unresolved sexual abuse allegations would hurt his chances of obtaining visitation with E.M.  He denied the sexual abuse allegations and hoped he would be able to get the children back into his care.

In a December 2020 addendum report, the Agency expressed concern that Father had not disclosed a domestic violence incident with his ex-girlfriend that occurred in late August 2020 and he was now living with a new girlfriend.  If the children were returned to Father's care, they would not be able to protect themselves if a violent incident occurred.  Although visits were going well between Father and the older siblings, the sexual abuse investigation was still ongoing.  The caregivers reported one sibling wanted a

foster sister to pull down her underwear and the other sibling watched the foster sister use the restroom. The caregivers were monitoring the siblings to determine if the siblings were exhibiting sexualized behaviors or if their curiosity was developmentally appropriate.

In a January 2021 addendum report, Mother expressed extreme fear of Father reunifying with the children due to the sexual abuse allegations and Father's violent history. Father reported in early December 2020 that he had not learned anything from the sexual abuse group. He disliked the group and felt it was "weird." He had begun offender domestic violence counseling services.

The siblings' caregiver reported that the siblings tried to kiss a foster sister. One of the siblings reported that Father touched the other sibling's "butt" and that was why they had to leave Father's house. When the caregiver said it was not okay for anyone to touch their private areas, they said they knew because Mother had told them.

The court held a contested hearing on January 4, 2021 regarding the Agency's request under section 388 to modify the placement of the siblings. The Agency recommended supervised visitation with Father and placement only with Mother. The court reviewed the reports and exhibits, including the interviews of the children. The court heard testimony from an expert as well as a social worker and Father.

The court stated it found the video interview of the children persuasive and credible. The court found "by a preponderance of the evidence that there is sufficient new evidence that makes the change of the order requested by the Agency in the best interest of the children and therefore granted."

The court stated the children would be placed with Mother, but would remain in their current placement until Mother was in appropriate and

6

sustainable housing. The court ordered Father into individual rather than group counseling. The court wanted to see progress regarding the protective and safety issues, including how to protect children from sexual abuse and other forms of abuse.[3]

The court set a contested hearing for the adjudication and disposition of E.M.'s section 300 petition and the section 387 supplemental petitions for the siblings. An addendum report for the contested hearing indicated Father would start individual sexual abuse services at the end of January. Father reported that the criminal charges related to his domestic violence incident were dropped.

The siblings' caregiver reported hearing a recent discussion the siblings had with her own children in which the children disclosed that they had to move because their dad touched one of the siblings' "booty." One child said Father touched the child's "private part" with his hand. The child said, "My mom saw it and I believe her." The child said something about someone facing a wall, and then said "I remember it."

The Agency recommended termination of reunification services regarding the older siblings because 30 months had passed, which exceeded the reunification time frame. Father had not made substantial progress in addressing the sexual abuse and domestic violence issues and was unable to provide a safe home. Mother's circumstances that caused her to feel overwhelmed and unable to care for the children were largely the same and she did not have a sustainable plan for support. However, the Agency

---

[3] Father appealed the January 4, 2021 orders granting the section 388 petitions as to the siblings. "In *D.M.*, we concluded the juvenile court erred by applying an incorrect standard of proof in deciding the 388 petitions, reversed the orders, and remanded with directions." (*W.M.*, *supra*, D078633, at p. 6.)

recommended reunification services for both parents as to E.M. with Mother's case plan to include therapy and psychological evaluation and Father's to include individual therapy.

On February 17, 2021, the juvenile court held a combined contested hearing for adjudication and disposition of the section 300 petition for E.M. and the section 387 supplemental petitions for the siblings.

A social worker testified that Father started individual sexual abuse classes on January 28, 2021. He was referred for domestic violence classes, but the provider asked him to wait until he had a court order. Father had supervised visits with the three children twice a week and video calls. The supervisors at the visitation center reported he was on time to the visits, engaged well and appropriately with the children, and brought them snacks.

The Agency previously referred Father to a sexual abuse group, but he did not fully engage in the group and felt uncomfortable. He denied sexual abuse occurred. The social worker felt Father needed to make some progress and gain some insight before he had unsupervised visits with the children. The Agency was also concerned that due to E.M.'s young age, the child could not verbalize if some form of abuse occurred.

Mother testified that she asked for help with the children because she felt overwhelmed and did not want them to live in a shelter. She was also scared about Father seeing the children and felt she could not protect them. However, she recently entered a year-long program that provided housing, job training, life skills, family reunification, and would help her find permanent housing. She requested the court return the three children to her care.

The court considered the evidence presented and the arguments of counsel. The court noted that the issues regarding the three children

converged to the point of whether the parents had the ability to provide a safe and protective environment. The court expressed concern that as recently as the month before the hearing the siblings were talking specifically about the sexual abuse and expressing associated trauma.

The court commented that it had directed Father into individual therapy because Father expressed discomfort in a group setting, but Father continued to deny the issues. The court noted that after 29 months, the siblings were not in a position of stability and permanency. The court adopted the recommendations in the October 2020 report, with modifications, and sustained the section 387 supplemental petitions. The court stated the previous disposition and placement with Mother was not effective in the rehabilitation and protection of the children and that there was "clear and convincing evidence" that the siblings should continue to be removed from the Mother. The court found placement with Father would be detrimental and directed the children be placed in licensed foster care. The court terminated mandatory reunification services for both Mother and Father as to the siblings and set a section 366.26 permanency planning hearing.[4]

---

[4]     Father filed a writ petition challenging the February 17, 2021 orders as to the siblings and requested a stay of the section 366.26 hearing. (*W.M.*, *supra*, D078633, at pp. 6-7.) We issued a stay pending the finality of our decisions in case Nos. D078474 and D078633. (*Id*. at p. 7.) We concluded the court made its section 361, subdivision (c) finding, by clear and convincing evidence, only as to Mother. We also concluded the orders finding that placement of the children with Father would be detrimental were erroneous because they were "not made either by clear and convincing evidence or by application of section 361, subdivision (c)'s standard of proof." (*W.M.*, at p. 10.) Therefore, we issued a peremptory writ of mandate directing the court to vacate its February 17, 2021 orders and enter new orders consistent with our opinions in *D.M.* and *W.M.* (*Id*. at p. 11.)

9

As to E.M., the court made a true finding on the petition pursuant to section 300, subdivision (b) and adopted the recommendations of the Agency's initial October 2020 report, which were modified to reflect that removal would be only from Mother since Father was noncustodial. The recommendation was further modified to state placement with Father would be detrimental to E.M. When asked for the factual basis for E.M., the court stated Father's progress in participating in services was slow and noted Mother did not feel E.M. would be safe in the care of Father based on his behavior with the siblings and his previous denials. The court stated, "It's for these reasons that this court adopts and finds that the petition is true; that there would be substantial danger to the physical health, safety, and welfare of [E.M.] if not presently removed from the care of Mother. [¶] In addition to that, even though Father has indicated he is attending services, this court has already previously stated why this court feels that placement with Father would be detrimental to [E.M.]." The order stated there was clear and convincing evidence E.M. should continue to be removed from the custody of Mother pursuant to section 361, subdivision (c).

Father timely filed this appeal of the February 17, 2021 order regarding E.M.

## DISCUSSION

As he did in the prior appeals, Father contends the juvenile court applied the wrong legal standard when it determined placement of E.M. with him would be detrimental. We again agree.

"The purpose of the California dependency system is to protect children from harm and to preserve families when safe for the child. (§ 300.2; [citation].) The focus during the reunification period is to preserve the family whenever possible. [Citation.] Until services are terminated, family

reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody. (§§ 366.21, 366.22; [citation].)" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

"If a court orders removal of a child pursuant to [s]ection 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of [s]ection 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) A finding that placement with a noncustodial parent would be detrimental to the well-being of the child under this statute "must be made by clear and convincing evidence." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829; see also *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 246 [allowing termination of parental rights based on detriment findings made at earlier hearings by a preponderance of the evidence violated due process].) The party opposing placement with a noncustodial parent bears the burden of proof. (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402.)

At the outset, we decline the Agency's invitation to apply the doctrine of forfeiture to Father's claims. Although Father did not specifically request placement of E.M. with him at the dispositional hearing, he requested placement of the child with him at the detention hearing and contested the loss of custody regarding E.M. throughout the case. His request for placement was also noted in the Agency's initial report and recommendation.

As stated in our earlier decisions, the juvenile court erred in its January 4, 2021 order granting the Agency's section 388 petitions for removal

11

of the siblings from placement with Father after finding "by a preponderance of the evidence that there is sufficient new evidence that makes the change of the order[s] requested by the Agency in the best interest of the children." (*D.M.*, *supra*, D078474, at pp. 15-17; *W.M.*, *supra*, D078633, at p. 7.)

In the February 17, 2021 orders, the court ultimately only made findings under section 361, subdivision (c) that clear and convincing evidence showed the children should continue to be removed from Mother. The court did not apply the clear and convincing evidence standard to the finding that placement of the siblings with Father would be detrimental. (*W.M.*, *supra*, D078633, at p. 10.)

Similarly, the court did not apply a clear and convincing standard regarding placement of E.M. The order stated there was clear and convincing evidence E.M. should continue to be removed from the custody of Mother pursuant to section 361, subdivision (c). However, in making the determination that placement of E.M. with Father would be detrimental, the juvenile court relied on its earlier findings of detriment noting Father's progress in participating in services was slow and that Mother did not feel E.M. would be safe in Father's care based on his conduct with the siblings. There was no specific evidence of detriment to E.M. and the court did not state it was applying a clear and convincing standard regarding placement of E.M.

Because the determination as to placement of E.M. is so intertwined with the determinations regarding the siblings, we conclude the February 17, 2021 order finding placement of E.M. with Father would be detrimental should be vacated and the matter remanded for the court to conduct a new hearing on this issue.

12

Given our conclusion, we need not address Father's contention regarding the sufficiency of the evidence to support the court's finding of detriment regarding placement of E.M.

## DISPOSITION

The portion of the February 17, 2021 order determining placement of E.M. with Father would be detrimental is vacated and the matter is remanded with directions for the juvenile court to conduct a new hearing on this issue and to apply the correct legal standard of proof to determine if placement of E.M. with Father would be detrimental based on the facts existing at the time of the further proceeding.

GUERRERO, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

13