Filed 10/1/21; Certified for Publication 10/29/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SOLOMON B., et al., | B311250 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20LJJP00627) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SINDY S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Amir Aharonov, Judge Pro Tempore. Reversed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Sindy S. (Mother) appeals from the juvenile court's dispositional orders regarding her two sons, five-year-old Solomon B. and four-year-old Samuel B. The juvenile court took jurisdiction of them based upon custodial father Clarence B.'s (Father) substance abuse, as well as the children's filthy and dangerous living conditions. Mother, who had fled to Texas based upon Father's domestic violence, immediately returned to California and asserted that the children should be placed with her as a nonoffending, noncustodial parent.

Although finding no current risk to the children posed by Mother's conduct, the juvenile court declined to place the children with her, finding that doing so would nevertheless be detrimental to their welfare under section 361.2 of the Welfare and Institutions Code.[1] Mother disputes this finding on appeal.

To deny placement with a nonoffending and noncustodial parent, the juvenile court must find *by clear and convincing evidence* that placement would be detrimental to the health, safety, and/or well-being of the children. The reasons stated by the juvenile court, primarily "abandonment," are insufficiently supported.

Mother did not abandon the children or knowingly leave them in the care of an abusive Father. She fled California for safety reasons and regularly monitored their children's well-

_____

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

being. Her belief that Father would not abuse or neglect them was rational, and she quickly returned to California when trouble arose, attending hearings, participating in services, and undergoing a psychiatric evaluation.

Because substantial evidence does not support the detriment finding, we reverse the portion of the juvenile court's jurisdictional and dispositional orders denying placement with Mother, and remand for further hearing on Mother's request for placement in accordance with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

### A.    The Family

Mother has two children with Father. Solomon was born in 2015, and Samuel followed in 2016.

Mother and Father lived together with the children until 2019. During that time, Mother and Father had a volatile relationship, regularly fighting in front of the children. The family had been referred to the Department once before following one of these altercations.

In December of 2015, Mother threw a chair at Father's head, resulting in her arrest. Both parents agreed to participate in protective services, and their voluntary family maintenance case was eventually dismissed.

In November 2018, police were called to the home after Father pushed Mother against a wall, repeatedly punched her face, and attempted to strangle her. Father was arrested and convicted of domestic violence charges.

On September 15, 2019, Mother left the family home, sending Father a text message notifying him that she was leaving the children in his custody. She later told social workers that she was "overwhelmed" by raising the children in the

3

chaotic, violent environment caused by her and Father's "toxic" relationship. She said that she felt that she needed to definitively separate from Father before retaking custody of the children. She resettled in Texas.

When she left, Mother claimed to have no concerns about Father's ability to care for the children. She reported that Father had not directed any abusive behaviors towards the children, and that, to her knowledge, he had not used illegal substances or smoked marijuana in front of the children.

Although Mother did not communicate with Father about the children's welfare, she regularly called the maternal grandmother and asked about the children. She also spoke with the children via video conference most weekends, when they stayed with the maternal grandmother.

## B.    Emergency Removal Order

Shortly after Mother left, Father moved into a motel with the children. A year later, on September 19, 2020, the Department received a report that, among other things, Father had been leaving the children alone in the motel, using drugs with the children present, and failing to provide adequate food and medical care for the children.

The Department sent a social worker to the motel to investigate. Upon arriving at the family's motel room, Father was not present. The children were left in the care of an unnamed male, who was not able to locate Father. The social worker noted that the room where the children lived was strewn with dirty clothing, partially eaten food, and other trash. Marijuana paraphernalia, including a large glass bong, rolling papers, and a lighter, were kept on a table within reach of the children. The children were dirty, and appeared to have

developmental delays; at ages four and five, neither seemed capable of speaking in sentences.

Father returned to the room after a few minutes. He denied the allegations against him. Although Father reported that he did not use drugs or take medication, he admitted to using marijuana. He agreed to submit to drug testing, later testing positive for marijuana and oxymorphone.

On September 25, 2020, the Department contacted Mother in Texas and informed her of the situation. She returned to California for the detention hearing and requested that the children be released to her care.

On October 2, 2020, the Department obtained an expedited order to remove the children from their parents. The children were placed with their paternal great-uncle and great-aunt.

## C.    Jurisdiction Petition and Detention

On October 6, 2020, the Department filed a petition alleging that the children were subject to dependency jurisdiction pursuant to section 300, subdivisions (a) and (b)(1).

The petition articulated five counts supporting jurisdiction. Three of those counts involved Mother: counts a-1 and b-3 alleged that Mother and Father's history of domestic violence placed the children at risk of serious physical harm; and count b-4 alleged that Mother had "a history of mental and emotional problems" rendering her "incapable of providing the children with regular care and supervision." Count b-4 was based on the maternal grandmother's statement that Mother "has mental health issues" and "is supposed to take medication," although the grandmother could not remember either the diagnosis or specific medication.

The remaining two counts concerned Father only. Count b-1 alleged that Father's "current abuse[ ] of marijuana and

oxymorphone" (a highly potent opioid posing a significant risk of abuse and addiction) rendered him "incapable of providing the children with regular care and supervision." Count b-2 alleged that Father "established an endangering and detrimental home environment for the children."

That same day, the children were detained from both parents pending a jurisdiction report and hearing.[2] The juvenile court also ordered a mental health evaluation for Mother.

## D.    Jurisdictional and Dispositional Hearing

On March 19, 2021, the juvenile court held a combined adjudication and dispositional hearing, which Mother and Father both attended telephonically. After hearing argument, the court took jurisdiction, sustaining counts b-1 and b-2 against Father. However, it dismissed the remaining counts, and struck Mother from the petition entirely. The court stated that it "just d[id]n't see a current risk on those counts relating to [Mother]," emphasizing that "[t]here was no real evidence on the issue of [count] b-4 at all to sustain that count."

At the concurrent disposition hearing, Mother requested that the children be placed with her, but the court denied the request, finding that placement would be detrimental by clear and convincing evidence. The court expressed concern about what it characterized as Mother's "abandonment of these children since . . . September 2019," and found that it was unreasonable

---

[2] In the minute orders, references are made to the children's placement "in Shelter Care under the supervision of [the] Department." However, the Department's reports and subsequent orders indicate that the children were continuously left in the custody of their paternal relatives.

for Mother "to expect that she should disappear for over a year and then walk back and just get these children out of whatever, while having no physical contact with them for that long."

When Mother's counsel objected to the juvenile court's characterization of her conduct, the court clarified that "it's not a[n] issue of disappearing, it's knowing what issues the children were dealing with and . . . what she had dealt with while she was with [Father], and notwithstanding that, she didn't take measures to protect them from him." It emphasized that the denial was not intended to penalize Mother, but to "protect[ ] these kids [during] what could be a very traumatic transition for them already." The court then ordered the Department to assess Mother for possible placement in the future.

Mother timely appealed.

## DISCUSSION

When a juvenile court orders removal of a child from the custodial parent, it must determine whether there is a noncustodial parent who wants to assume custody. If so, the court must "place the child with the [noncustodial] parent unless it finds that [such] placement . . . would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) A finding of detriment must be made by clear and convincing evidence. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.) We review the juvenile court's finding of detriment for substantial evidence, "bearing in mind the heightened burden of proof" in the trial court. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

The gravamen of the juvenile court's detriment finding is Mother's lack of contact with the children after September 2019,

combined with her failure to protect the children from Father. We analyze these issues seriatim.[3]

Initially, it is important to consider that the juvenile court dismissed all of the counts involving Mother and struck her entirely from the petition, stating that it "just d[id]n't see a current risk on those counts relating to [Mother]," emphasizing that "[t]here was no real evidence on the issue of [count] b-4 at all to sustain that count."

Moreover, the record does not support the juvenile court's conclusion that Mother lost contact with the children or "abandoned them" after she fled to Texas. To the contrary, she regularly checked in with the maternal grandmother about the children's welfare, while also participating in weekly video conferences with them. At the very least, this demonstrates a consistent desire to remain involved in the children's lives.[4]

In any event, failure to keep in close contact would not, by itself, be sufficient to support a finding of detriment. (*In re Adam H.* (2019) 43 Cal.App.5th 27, 33 ["An 'alleged lack of a relationship between father and [a child] is not, by itself,

_____

[3] Mother contends that the juvenile court's dispositional orders should also be reversed because it relies on the proposition that the court is entitled to receive an assessment of Mother's home environment before placing the children with her. In light of our disposition, we need not reach that issue.

[4] The juvenile court's emphasis on Mother's lack of *physical* contact with the children after September 2019 ignores the practical reality of maintaining relationships across state lines in 2020 and 2021. Given the ongoing health risks and travel restrictions caused by the COVID-19 pandemic, Mother's telephonic and video contact with the children was entirely appropriate.

8

sufficient to support a finding of detriment' "]; *In re K.B.* (2015) 239 Cal.App.4th 972, 981 ["A lack of contact between the child and the nonoffending noncustodial parent, alone, is not a basis for finding detriment"].)

The juvenile court also based its detriment finding on Mother's failure to protect the children from the risks associated with Father's abusive conduct and marijuana use. Although Mother fled her violent relationship with Father in order to gain independence and establish an alternate home for herself and the children, she did not believe that Father's abusive conduct towards *her* indicated that Father would similarly abuse the children. Because there were no substantiated allegations that Father physically or emotionally abused the children after Mother left, her belief appears to have been correct. Importantly, the juvenile court specifically concluded in its jurisdictional findings that Father's abusive conduct toward Mother did *not* pose a current risk to the children given the couple's current separation.

In terms of marijuana use, Mother reported that Father had never used marijuana around the children while they lived together. It was therefore not unreasonable for her to conclude that Father's history of marijuana use would not pose serious risks to the children, especially since Mother regularly checked on the children's welfare and communicated with them by video conference during visits with the maternal grandmother. And the maternal grandmother corroborated Mother to the extent that she, too, believed Father was abstaining from marijuana while caring for the children. Whenever she picked up the children they "did not look disheveled[ ] and were always clean."

9

Once Mother learned that the Department had become involved and that Father's marijuana use may have been impacting his ability to care for the children, she quickly returned to California, sought placement, attended all significant dependency hearings, and participated in recommended services, including parenting classes and a psychiatric evaluation. This behavior belies a parent at current risk of failing to protect her children.

Although the Department had over five months to investigate Mother's suitability for placement, it presented scant evidence on that topic to the juvenile court.[5] Based on such evidence, the juvenile court's findings do not rise to the high level of detriment required under section 361.2. (See, e.g., *In re C.M.* (2014) 232 Cal.App.4th 1394, 1402 [reversing order denying placement when the minor wanted to remain with her maternal grandparents, and did not want to be separated from her half-

---

[5] The Department's emphasis on Mother's lack of protective capacity rings hollow in light of the juvenile court's dismissal of all jurisdictional allegations as to her. (Cf. *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 302 [" 'If a noncustodial parent is in some way responsible for the events or conditions that currently bring the child within [§] 300—in other words, if the parent is an "offending" parent—those facts may constitute clear evidence of detriment under [§] 361.2, [subd.] (a)' "].) Further, the Department failed to "explore[ ] alternative means of investigating" Mother's current ability to care for the children, such as reaching out to her Texas employer or verifying the stability of her home environment, effectively "depriv[ing] the court of . . . information" potentially relevant to a placement decision. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1572-1573.)

sibling or change schools; the noncustodial father worked long hours and was often away from home; and the noncustodial father had a reported history of alcohol abuse and domestic violence]; *In re John M.*, *supra*, 141 Cal.App.4th at pp. 1572-1573 [reversing order denying placement when the child wanted to live with another relative and did not want to move out of state; there had been little contact between the child and his noncustodial father; and the court lacked evidence regarding the suitability of the noncustodial father's home environment].)

### DISPOSITION

The juvenile court's March 19, 2021 jurisdictional and dispositional orders are reversed insofar as they deny placement with Mother. The matter is remanded for further proceedings in accordance with this opinion.

CRANDALL, J.*

We concur:

ROTHSCHILD, P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

CHANEY, J.

Filed 10/29/2021

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re SOLOMON B., et al., | B311250 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 20LJJP00627) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER CERTIFYING FOR PUBLICATION |
| Plaintiff and Respondent, | |
| v. | |
| SINDY S., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on October 1, 2021, was not certified for publication in the Official Reports. For

good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

CRANDALL, J.*          ROTHSCHILD, P. J.          CHANEY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.