Filed 1/11/23  In re V.R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re V.R., a Person Coming Under the Juvenile Court Law. | B315045 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.R.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP02537A) |

        APPEAL from the judgment and order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

        Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

        Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan Mercke, Associate County Counsel, for Plaintiff and Respondent.

————————————————

C.R. (Father), the noncustodial and nonoffending parent of V.R., appeals from the juvenile court's judgment, findings, and dispositional order of August 20, 2021. Father asserts that the court's order denying his request for physical custody of V.R. is not supported by sufficient evidence and violates his due process. Father also claims that the juvenile court abused its discretion when it denied his request for a continuance of the dispositional hearing to allow him more time for visitation with V.R.

We do not address Father's additional argument that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA), and specifically, with its initial inquiry duties under section 224.2 of the Welfare and Institutions Code when it failed to question available extended family members as to whether V.R. is an Indian child.[1] After taking judicial notice of the juvenile court's minute orders dated August 19, 2022 and November 18, 2022 (see Evid. Code, § 452, subd. (d)), and ordering additional briefing from the parties pursuant to Government Code section 68081, we find the issue moot. The orders provide conclusive evidence, not disputed by the parties who did not file additional briefs, that the juvenile court has now provided all of the relief Father seeks under ICWA concerning making inquiry of extended family members.

We conclude that the juvenile court's dispositional order is supported by substantial evidence and did not violate Father's due process rights, and the court did not abuse its discretion in denying Father's request for a continuance.

Accordingly, we affirm on all grounds.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 1, 2021, DCFS initiated a dependency action on behalf of then five-year-old V.R. and her younger half sister after V.R. received a black eye during a domestic violence incident between Mother and Mother's boyfriend.[2]  DCFS alleged that V.R. came within section 300, subdivisions (a), (b)(1), and (d) due to domestic violence between Mother and her boyfriend, Mother's substance abuse and mental health issues, and sexual abuse involving Mother.  Father was not identified as an offending parent in the petition.

At the time of the petition, V.R. resided with her half sister and Mother in the home of her maternal grandfather, who brought the children to live with their maternal great-aunt (and thus away from Mother) when he saw V.R.'s black eye.  DCFS and the juvenile court subsequently detained the children with their maternal great-aunt.

When DCFS filed its petition in June 2021, V.R. had not lived with Father since sometime in early 2016, when he lived with Mother and V.R. for approximately three months.  Father's whereabouts were unknown at the time of the petition, so his arraignment was set for July 16, 2021.  DCFS located Father on July 14, 2021.  At his arraignment, Father requested an assessment by DCFS for unmonitored visits and release of V.R. to his custody.

DCFS conducted the assessment, during which it interviewed Father, V.R., V.R.'s therapist, and V.R.'s maternal aunt.

When DCFS interviewed Father in July 2021, Father reported that the last time he had seen V.R. was three months

---

[2]     This appeal only concerns V.R. and not her half sister.

3

earlier.  Father confirmed Mother's report that he had lived with V.R. for several months from her birth in September 2015 until 2016.  He also reported that he spent "weekends, birthdays, holidays, etc." with V.R.  Father stated that he had been absent from V.R.'s life because he had been incarcerated for 18 months.

DCFS also interviewed V.R., who stated that she would be "comfortable" visiting Father in his home if no one else was there.  When asked about living with Father, she said it would "make me feel scared.  I don't want to live with him right now.  I don't know him, and [half sister] can't come with me."

V.R.'s therapist stated as to V.R.'s possible placement with Father: "She will be new to that family, and she will be without her sister.  Despite everything they have been through with their mother, the girls have always been together.  Separating them will have an impact on both of them[.]  [T]hey've never been separated before.  I do see a detriment to releasing, prior to her having visits with the father.  We need to allow her time to transition from the home that she knows, to a new home.  It will be very difficult on her . . . ."  The therapist also stated concern over Father's lack of contact with V.R., noting he had "never played a role in the child's upbringing.  Since his release from incarceration in 1/2021, he has had one in-person contact with [V.R.], and no telephonic/virtual contact . . . .  Consistent visitation is recommended[] to allow the father and the child time to bond, to build a relationship, and to facilitate a stable transition to the father's care."

V.R.'s maternal aunt told DCFS that she had not seen V.R. in a year and a half, but she would be willing to serve as a permanent placement for both V.R. and her half sister.

4

In DCFS's assessment for the court, it stated that it was concerned about the impact of V.R.'s separation from her half sister, noting that V.R. had sustained trauma while in the care of Mother, was now suffering the additional trauma of being separated from her Mother, and that separation from her half sister would add to her existing trauma. DCFS also reported that "all parties" said Father had never played a role in V.R.'s upbringing. DCFS did a home study and found Father's home "safe" and "appropriate." Father lived in maternal grandmother's home, where her boyfriend and paternal uncle also lived.

On July 30, 2021, the juvenile court continued the adjudication and dispositional hearing scheduled for that day on the request of Mother's counsel to allow for possible settlement, and on the request of V.R.'s counsel to allow for time to receive the results of Father's Child Abuse Central Index (CACI) report.

Father's counsel did not object to the continuance, and requested overnight and unmonitored visitation. DCFS's counsel objected to unmonitored visitation and V.R.'s counsel objected to overnight visitation. The juvenile court denied Father's requests, stating that more "transition" time between V.R. and Father was necessary, and ordered DCFS to continue to assess Father for unmonitored visitation. The court also ordered DCFS to provide Father with a written visitation schedule and to provide the court with an updated assessment regarding placement with Father before the next hearing.

In advance of the August 20, 2021 adjudication and dispositional hearing, DCFS submitted a last minute information report to the court. The report included Father's CACI results, which were negative, a final assessment for whether V.R. should

5

be released to Father, which it argued against, and Father's visitation schedule.

Father's visitation schedule provided for monitored, daily visits by phone or video at 4:00 p.m. However, as of DCFS's August 11 report, Father had only two of his offered daily phone or video visits. He missed a scheduled visit and attempted to reschedule, but the caregiver had other plans for when he tried to reschedule. He also called at 4:00 p.m. to schedule a 6:00 p.m. visit that same day, but the caregiver had plans to take V.R. to the beach, so V.R. asked that the visit occur the following day. It does not appear from the record that this visit took place. There is no evidence of any visits besides the two virtual visits that took place sometime before August 11.

DCFS also attempted to schedule in-person visits between Father and V.R. near Father's workplace and V.R.'s home, but Father reported he was no longer working and his transportation constraints meant he could only meet V.R. halfway between his home and V.R.'s home, and only after 5:00 p.m. on weekdays. DCFS did not schedule these visits due to a conflict with V.R.'s school and counseling that would make it "extremely difficult" to drive V.R. to the halfway point, which was in a different county from her home, at that time of day and during the week.

On August 20, 2021, the court held the previously continued dispositional and adjudication hearing. The juvenile court found V.R. came within section 300, subdivision (b)(1), based on Mother's substance abuse, mental health issues, domestic violence, and exposure of V.R. to sexual activities.

Father's counsel then requested that V.R. be placed with Father, or, in the alternative, a continuance of the dispositional hearing and an order for overnight visitation. V.R.'s counsel

6

objected to placement with Father, but not specifically to a continuance, stating only that he had no position and was ready to go forward.

Counsel for V.R. argued against her placement with Father. Counsel reported that V.R. said she would be "comfortable" at Father's house if it was just him and her, and comfortable sleeping over at his house if she could bring a stuffed animal, but she was "kind of" scared of the other people living in the home, which counsel attributed to V.R.'s prior "bad experiences" around "strangers." V.R.'s counsel also argued that V.R. had "been through a lot," and her "only constant has been her sister who she'd be separated from" if placed with Father.

DCFS's counsel also argued against placing V.R. with Father, citing V.R.'s therapist's report as to a detriment to V.R., and that Father had only minimal contact with V.R. throughout her entire life and had only visited her virtually since dependency proceedings commenced.

After hearing arguments from all parties, the juvenile court denied Father's request for physical custody of V.R. It found a "detriment as described by the therapist" because Father had not maintained a relationship with V.R. "for years," V.R. did not know Father "very well," and needed time to learn to "trust" him—particularly because V.R. had been previously exposed to strangers that she was "forced to live with" and who were "violent," causing her a lot of "trauma." The court elaborated that V.R. had been "exposed to men that harm her and . . . needs time to try to learn to know [Father] and trust him." The court also described V.R.'s relationship with her half sister as "very important" because it gives her a "sense of stability" while she is "still in this kind of fragile state."

In its minute order, the juvenile court found in relevant part, by "clear and convincing evidence, pursuant to Welfare and Institutions Code 361(a)(1), 361(c), 361(d) and 362(a) . . . applying to noncustodial parent . . . the constitutional and statutory safeguards available to custodial parents . . . [¶]  [i]t is reasonable and necessary to remove the child from the parents . . . because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being . . . of the child . . . ."  The court also stated it would be "detrimental" to V.R.'s "safety, protection, or physical or emotional well-being" to be placed with Mother or Father. The juvenile court ordered monitored visitation for Father, with discretion to DCFS to liberalize.  The court ordered reunification services for both parents.  It does not appear that the juvenile court explicitly ruled on Father's request for a continuance.

This appeal by Father of the juvenile court's August 20, 2021 jurisdictional and dispositional judgment, findings, and order followed.

## DISCUSSION

## I.    Substantial Evidence Supports the Juvenile Court's Order

### A.    Standard of Review

We review the juvenile court's order for substantial evidence.  "We review the record in the light most favorable to the court's order to determine whether there is substantial evidence" to support the court's order. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).)  "Our role is limited because our review of the juvenile court's detriment finding is deferential." (*In re A.C.* (2020) 54 Cal.App.5th 38, 43 (*A.C.*) [applying substantial evidence standard].)  In making a finding of

8

detriment, "the court weighs all relevant factors to determine if the child will suffer net harm." (*Ibid.*, citing *Luke M.*, *supra*, at p. 1425.)

The juvenile court was required to make its findings under sections 361, subdivision (d), and 361.2, subdivision (a), by "clear and convincing evidence." (*A.C.*, *supra*, 54 Cal.App.5th at p. 43; *In re J.N.* (2021) 62 Cal.App.5th 767, 778 (*J.N.*).)

**B.     Section 361, Subdivision (d), and Section 361.2, Subdivision (a), Both Apply**

As an initial matter, the parties disagree whether the juvenile court made its findings under section 361.2, subdivision (a) or section 361, subdivision (d). Section 361, subdivision (d) applies to noncustodial parents who are not living with the child at the time of the section 300 petition. (§ 361, subd. (d); see *In re S.S.* (2020) 55 Cal.App.5th 355, 373 (*S.S.*).) When the juvenile court orders removal of a child from both parents and the noncustodial parent requests custody, as Father did here, then section 361.2, subdivision (a), also applies. (See *Ibid.*; *In re Adam H.* (2019) 43 Cal.App.5th 27, 31–32 (*Adam H.*).)

Here, the juvenile court's minute order explicitly cites to section 361, subdivision (d), but not to section 361.2, subdivision (a). It does, however, recite the text of section 361.2, subdivision (a), stating that it would be "detrimental" to V.R.'s "safety, protection, or physical or emotional well-being" to be placed with Mother or Father, without attributing this recitation and finding to any specific statute.

Any error by the juvenile court in not specifically noting it was citing section 361.2, subdivision (a) is harmless for two reasons. First, the court recited the language of section 361.2, subdivision (a); and second, the relevant language in both

9

sections 361.2, subdivision (a), and 361, subdivision (d) is nearly identical.  (Compare § 361.2, subd. (a) [placement with parent with whom child was not residing with at time of events that brought the child under § 300 would be "*detrimental* to the safety, protection, or physical or *emotional well-being* of the child"], with § 361, subd. (d) [a dependent child shall not be taken from the physical custody of a parent with whom the child did not reside at the time the petition was initiated unless there is "*substantial danger to* the physical health, safety, protection, or physical or emotional well*-being of the child"], italics added.)[3]  The minor differences between the language in section 361.2, subdivision (a), and section 361, subdivision (d) in regard to emotional well-being are not dispositive here, a fact that both parties implicitly acknowledge when they each rely on case law from our court applying only section 361.2, subdivision (a), with Father relying upon *In re C.M.* (2014) 232 Cal.App.4th 1394 (*C.M.*), and DCFS relying upon *A.C.*, *supra*, 54 Cal.App.5th 38.[4]  "Although there

---

[3]     Section 361, subdivision (d) also provides that the court must find that there are "no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's [parent] . . . ."  The juvenile court also recited this language in making its finding that placement with V.R.'s current caregiver, rather than with Father, was warranted.

[4]     As Father notes, section 361, subdivision (d) was recently amended in 2017, so there is little authority on it.  (Assem. Bill No. 1332 (2017–2018 Reg. Sess.); Stats. 2017, ch. 655, § 1.) Father cites only one case interpreting it, *In re J.N.* (2021) 62 Cal.App.5th 767 (*J.N.*), which he admits is not directly on point and cites only for the proposition that review is for

10

may be circumstances in which the differences between these two detriment standards could yield different results," this is not such a case because the issue here is the juvenile court's finding of impact on V.R.'s emotional well-being if placed with Father, which is similar in both statutes, and the court made its findings and orders explicitly reciting the language in both sections. (*J.N.*, *supra*, 62 Cal.App.5th at p. 777, fn. 6.)

Accordingly, it is not reasonably probable that the outcome here would have been different if the juvenile court had explicitly cited section 361.2, subdivision (a), and not just recited its text, so any error is harmless. (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303–304 [holding that the juvenile court's application of § 361 instead of § 361.2 to a noncustodial parent was harmless error because in light of the "evidence, and the court's express finding under section 361, we cannot say it is 'reasonably probable' that the court would have made a different finding had it considered whether the placement would be detrimental to the children's safety or physical well-being under section 361.2."]; see also *In re Abram L.* (2013) 219 Cal.App.4th 452, 463 (*Abram L.*).)

## C. The Evidence Supports the Juvenile Court's Order

Father argues that we must reverse because the juvenile court's findings of detriment to emotional well-being and substantial danger to emotional well-being rested only on two facts: V.R.'s lack of relationship with Father, and V.R.'s relationship with her half sister. But the juvenile court did not

---

substantial evidence and that the juvenile court was required to make its findings by clear and convincing evidence.

rest its decision solely on these facts.[5] It also found that V.R. had been previously exposed to "strangers" who were "men" that she had been "forced" to live with and who were "violent" to her. V.R. had been through a lot of "trauma," and she needed time to learn to "trust" Father. V.R.'s relationship with her half sister was "very important" because it was her only source of stability while she was in a "fragile state."

The juvenile court also reviewed the assessment of placement with Father that it ordered DCFS to conduct. The assessment included findings by DCFS and V.R.'s therapist's opinion about: (1) Father's lack of any relationship with V.R. during most of her life, and Father's limited attempts to visit V.R. since the dependency proceeding commenced; (2) the trauma V.R. had faced while living with strangers before, and her statement she was afraid of the people in Father's house; (3) the importance of V.R.'s relationship with her half sister, in light of V.R.'s recent separation from Mother, coupled with the trauma she had just gone through; (4) V.R.'s own wishes to stay in her current placement and with her half sister, and to not move in with Father, particularly considered in the context of her statement that she would be comfortable visiting Father overnight only if she could bring a stuffed animal and no one else was there; and (5) the therapist's opinion that there would be a "detriment" to V.R. if she was sent to live with her Father without more time for

---

[5] These two facts are relevant to the analysis. The absence of a relationship between a parent and child is one factor that may be considered under section 361.2, subdivision (a). (*A.C.*, *supra*, 54 Cal.App.5th at p. 43, citing *Abram L.*, *supra*, 219 Cal.App.4th at pp. 464, 161.) Although not dispositive on its own, V.R.'s own wishes are also relevant. (*A.C.*, *supra*, at p. 43, citing *Adam H.*, *supra*, 43 Cal.App.5th at p. 33.)

her to get to know Father, and that without "time to transition . . . It will be very difficult on her . . . ."

Considering all of these factors as to whether V.R. would "suffer net harm" to her emotional well-being if released to Father, we conclude that the juvenile court's decision was supported by substantial evidence. (Cf. *A.C.*, *supra*, 54 Cal.App.5th at p. 43.)

Father attempts to analogize the facts here to those in our decision in *C.M.*, *supra*, 232 Cal.App.4th 1394, but is unpersuasive. *C.M.* also involved a noncustodial, nonoffending father. (*Id.* at p. 1396.) But in *C.M.*, the father maintained a relationship with the child by talking with her on the phone frequently and seeing her on weekends and holidays, and also providing financial support. (*Id.* at pp. 1396–1397.) While C.M. herself expressed that she was "terrified" of being released to her father (but also wanted unmonitored weekend visits with him) and wanted to maintain a relationship with her sibling, no therapist or other mental health expert opined that C.M. would suffer emotionally if placed with the father and away from the sibling. (*Id.* at pp. 1398, 1402.) The opinion in *C.M.* also notes that, unlike here, the father offered to have C.M.'s sibling placed with him, so the children would not have to be separated. (*Id.* at p. 1404.)

This case is more like our decision in *A.C.*, *supra*, 54 Cal.App.5th 38, where we upheld a finding of harm to the emotional well-being of a child if placed with the father at the dispositional hearing. A.C. also lacked a relationship with her noncustodial, nonoffending father, did not wish to be placed with her father, had a strong sibling bond that would be harmed if she was separated from the sibling as a result of placement with her

13

father, and had a therapist who opined as to detriment based on these factors.  (*Id.* at pp. 43–44.)

Father also argues that under section 361, subdivision (e), the juvenile court was required to expressly state "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . ."  (*Ibid*.)  The court made this statement in its minute order.  Any error in not providing further detail was harmless.  A failure to make express findings may be excused if there is substantial evidence to support an implied finding.  (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218–1219.)  Such evidence can be implied from the record here, where, as detailed above, Father was offered daily virtual visits, and there was evidence that V.R. could not be placed with Father without harm to her emotional well-being until she got to know her Father better.  If Father begins visiting V.R. more regularly, their relationship may be more established by the time the court needs to make a final decision on permanency.  If the court thought otherwise, it would not have ordered continued visitation and reunification services for Father.

Finally, Father argues that the juvenile court erred by not finding that he would cause harm to V.R. before refusing to place V.R. with him, but that determination is not necessary.  In *A.C.*, *supra*, 54 Cal.App.5th at page 46, we rejected a similar argument because "the court's inquiry properly is more comprehensive than simply whether a child will be physically safe with a noncustodial parent or whether that parent has behaved badly.  [Citation.]  A court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being."

14

In sum, there is substantial evidence to support the juvenile court's dispositional order denying placement of V.R. with Father.

## II. The Order Did Not Violate Father's Due Process

Father next argues that the denial of his request for placement violated his due process rights because the "detriment finding is not supported by substantial evidence." As stated above, we disagree. Because we find that the juvenile court's order is supported by substantial evidence, we do not find a due process violation.

Parental rights are fundamental and a juvenile court "may not terminate a nonoffending, noncustodial [parent's] parental rights without finding, by clear and convincing evidence, that awarding custody to the parent would be detrimental." (*In re D.H.* (2017) 14 Cal.App.5th 719, 730.) "To comport with due process, the detriment finding must be made under the clear and convincing evidence standard." (*C.M.*, *supra*, 232 Cal.App.4th at p. 1401.) Here, the juvenile court's finding of detriment to V.R. was made explicitly on the basis of "clear and convincing evidence," which we find supported by substantial evidence.

Father's reliance on *S.S.*, *supra*, 55 Cal.App.5th 355 is misplaced. There, the court found a due process violation where the "state detained and removed the child based only on allegations against mother and the court found giving father custody would be detrimental based on problems arising from his poverty." (*Id.* at p. 359.) "The real problem with the trial court's detriment finding is it was based on father's poverty, which is barred by statute and our case law." (*Id.* at p. 373.) Specifically, the father there could not regain custody of his child because of his "economic situation . . . . He lacked adequate housing and

15

also lacked transportation." (*Id.* at p. 376.) Here, Father's limited transportation may have impacted his ability to visit with V.R. in person, but not by phone or video, which he participated in only twice despite being offered daily visits. More critically, however, is that here the juvenile court's decision against placement with Father at the dispositional phase was based on harm to V.R.'s emotional well-being, which was based on the need for an ongoing relationship with V.R.'s half sister, her fear of strangers, the trauma she had just gone through at the hands of men who were strangers, her lack of a relationship with Father throughout all but three months of her life, and her therapist's opinion. None of these factors were present in *S.S.*, where the main issue was the father's lack of housing. (*Ibid.*)

Father's claim that his due process rights were violated is without merit.

## III. The Juvenile Court Did Not Abuse Its Discretion in Denying a Continuance

Father also argues that the juvenile court erred in denying his request for a continuance of the dispositional hearing to allow him time for more visitation with V.R.

We review the juvenile court's decision to deny a continuance for an abuse of discretion. (*M.M.*, *supra*, 81 Cal.App.5th at p. 69, review granted.)

In juvenile dependency cases, continuances are generally discouraged. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 95.) Upon the request of counsel, "the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest

16

of the minor." (§ 352, subd. (a)(1).) "Continuances shall be granted only upon a showing of good cause." (*Id*., subd. (a)(2).) In addition, "if a minor has been removed from the parents' or guardians' custody, a continuance shall not be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days . . . ." (*Id*., subd. (b).) "Thus, when a child has been removed from the parents' or guardians' custody . . . the juvenile court may not grant a continuance that would cause the disposition hearing to be completed more than 60 days after the detention hearing, unless there are exceptional circumstances . . . ." (*In re A.J.* (2022) 77 Cal.App.5th 7, 17 (*A.J.*).)

The detention hearing was on June 3, 2021. Father requested a continuance on August 20, 2021. Thus, his request would have put the dispositional hearing out more than 60 days, so he was required to show that "exceptional circumstances" warranted a continuance. (§ 352, subd. (b); *A.J.*, *supra*, 77 Cal.App.5th at p. 17.)

Father does not argue that exceptional circumstances warranted a continuance. He simply claims more time was needed for visitation with V.R. and "transition." Yet, between when DCFS contacted him on July 14 and the August 20 dispositional hearing, Father had only two virtual visits with V.R., despite being offered such visits daily, and only attempted to schedule two others, at least one of which he tried to reschedule for a different time the very same day. When the juvenile court found good cause to grant a continuance at the July 30 hearing, it was to allow time for settlement with Mother and to obtain Father's CACI results, but it also cited the need to further assess placement with Father. Regardless, Father has

17

made no attempt to argue that exceptional circumstances existed that warranted a continuance, nor did he make such an argument below.

Father's reliance on *In re John M.* (2006) 141 Cal.App.4th 1564 for his argument that the juvenile court abused its discretion in denying a request for a continuance is unpersuasive. In *John M.*, the father was also a nonoffending and noncustodial parent, but the similarities end there. In *John M.*, the Court of Appeal found an abuse of discretion because very little was known about the father at the time of the detention hearing. Unlike here, the father's home study and assessment had not yet been completed, so "[w]hat the court should have done was continue the hearing, leaving [the minor] in his temporary placement for the period of time necessary to gather information about [the father]. In light of [the minor's] age [of 13], his special needs, and the court's estimate that it would take about a month or six weeks to receive an ICPC report, good cause existed for a continuance." (*Id.* at p. 1572.) Here, DCFS had already inspected Father's home, and had already conducted an assessment of Father, with the additional time supplied by the first continuance.

The juvenile court did not abuse its discretion in denying Father's request for a continuance of the dispositional hearing.

## DISPOSITION

The juvenile court's judgment, findings, and dispositional order of August 20, 2021 are affirmed.


HARUTUNIAN, J.*

We concur:


STRATTON, P. J.


WILEY, J.

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.