Filed 7/3/23  In re D.W. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.W. et al., Persons Coming Under the Juvenile Court Law. | B317405 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.W.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21LJJP00070A-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

Davion W. (Father) appeals a juvenile court disposition order declining to place his son, D.W., with him after the court removed D.W. from the custody of his mother Antaleen S. (Mother). Father, who was a non-offending parent in the dependency petition but who had just been released from prison on a robbery conviction, argues the juvenile court erred by finding it would be detrimental to place D.W. with him. We consider whether substantial evidence supports the juvenile court's detriment finding.

## I.  BACKGROUND

### A.    *The Investigation and Initial Proceedings*

In January 2021, the Los Angeles Department of Children and Family Services (the Department) received a referral alleging then 11-year-old D.W. and his four younger siblings[1] (who were ten, eight, five, and two at the time) were being neglected. The Department began investigating and filed a dependency petition alleging D.W. and his siblings were at risk of harm from, among other things, the unsanitary and hazardous home where they lived with Mother and her fiancé Jovan M., from Jovan's abuse of the children, and from Jovan's substance abuse and mental and emotional problems. In a later amended petition, the Department added additional dependency allegations, including an allegation that Mother failed to protect D.W. from sexual abuse by a maternal uncle.

At an initial detention hearing, the juvenile court removed the children from Mother's custody and D.W. was placed with a

---

[1]    D.W. and some of his siblings have different biological fathers.

non-related extended family member. Father was incarcerated at the time of that detention hearing, serving a six-year sentence for robbery (including a sentencing enhancement for great bodily injury). Father did not make his first appearance in the dependency proceedings until later, in June 2021. At that time, Father requested, and was granted, presumed father status as to D.W.[2] The court also granted Father monitored visitation.

A Department social worker interviewed Father in November 2021. By then, he had been released on parole and said he was participating in anger management classes. Father told the social worker that "as long as no one triggers [him] or upsets [him]," he would be off parole in a year.

Through a parentage statement submitted by counsel, Father stated he lived with D.W. from approximately 2009 to 2015. Father told a social worker that he wanted custody of all of his biological children. The social worker informed Father that D.W.'s two siblings recognized other men as their fathers and expressed concern that revealing their parentage might cause them additional trauma. Father said he did not care. When the social worker discussed visitation with Father, Father repeatedly stated he did not need to be babysat when seeing his children.

Mother and D.W. were questioned by the Department about life with Father prior to his incarceration. D.W. told a social worker that Father had been "very mean" and would hit

---

[2]     A paternity test later confirmed Father was the biological father of D.W. and two of D.W.'s siblings. Father also requested presumed father status as the other two siblings, both of whom believed other men were their respective fathers.

3

him.  Mother similarly said Father was physically abusive and controlling during the time they were together.

By December 2021, Father was having sporadic phone calls with D.W. but the two had not had any in-person visits.

### B.     *The Jurisdiction and Disposition Hearing*

The juvenile court held the jurisdiction and disposition hearing that same month (December 2021).  The court sustained the dependency petition with amendments by interlineation, finding dependency jurisdiction over the children was proper because:  (1) the home the children had been living in with Mother and Jovan was in an unsanitary and hazardous state; (2) Jovan took D.W. and one of his siblings with him to commit a burglary; (3) Jovan physically abused one of D.W.'s siblings; (4) Jovan had a diagnosis of bipolar depression and failed to take his medication as prescribed; (5) a maternal uncle sexually abused D.W. and one of his siblings; and (6) Mother failed to protect the children from these dangers.

In arguing disposition, D.W.'s attorney opposed giving Father custody of the child.  D.W.'s attorney represented that Father's contact with D.W. had been sporadic at best even after being released from custody and D.W. was "not necessarily interested in reunifying with . . . Father."  The Department likewise opposed placing D.W. with Father.  Father's attorney objected to any order removing D.W. from his custody and requested reunification services.  The Department construed the objection as a request to place D.W. in Father's custody and asked the court to find placement would be detrimental to D.W.'s safety, protection, and well-being.  The Department noted it had

4

not been able to assess where Father was living and expressed concerns regarding substance use.

The juvenile court removed D.W. from both Mother and Father and ordered him suitably placed. The court found there was a substantial risk of detriment to D.W. in being placed with Father (though, without objection, it did not specify its reasons for so finding). The court ordered family reunification services for Father—as to D.W. only.

## II. DISCUSSION

Under the governing substantial evidence standard of review, there is adequate support for the juvenile court's detriment finding. As we will explain, Father's recent release from custody, the statements by D.W. and Mother concerning Father's prior physical abuse, Father's statements concerning his ability to successfully complete parole, D.W.'s reluctance to reunify with Father, and the lack of information regarding the suitability of Father's home, justify the juvenile court's decision to decline to award custody of D.W. to Father.

When the juvenile court removes a child from a custodial parent at disposition, it must determine "whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of [Welfare and Institutions Code] Section 300, who desires to assume custody of the child." (Welf. & Inst. Code, § 361.2, subd. (a).) If the noncustodial parent requests custody, the court must place the child with that parent "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (*Ibid*.)

5

"A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425 (*Luke M.*).) These factors may include the dependent child's own wishes and the child's relationship (or lack thereof) with the non-custodial parent seeking custody—though those considerations alone cannot be determinative. (See, e.g., *id.* at 1426; see also *In re A.C.* (2020) 54 Cal.App.5th 38, 43; *In re C.M.* (2014) 232 Cal.App.4th 1394, 1402.)

On appeal, "[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the children would suffer such detriment. [Citations.]" (*Luke M.*, *supra*, at 1426; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.) Substantial evidence supports the juvenile court's detriment finding here.

At the time of the juvenile court's determination, Father had only recently been released on parole after serving a sentence for a violent criminal conviction. Father was attending an anger management class, but the record does not reflect his progress in the course and he rather ominously told a social worker that he would complete parole only if "no one triggers [him] or upsets [him]." Such a statement is cause for concern when Father would be subject to the stresses of parenthood if given custody of D.W.— who he had physically abused and been mean to in the past (statements that we credit under the governing standard of review).

Additionally, Father's communication with the Department following his release from custody had been minimal. During the

sole interview he had with a Department social worker following his release, he expressed that he wanted unmonitored visitation (contrary to the court's order for monitored visitation) and did not care about potentially adding to the trauma experienced by his younger two children. Further, by the time of the disposition hearing, the Department had not been able to assess Father's living situation to ensure it was safe for D.W.

The record also reflects Father did not have a significant relationship with D.W. predating the dependency case and only sporadically spoke to D.W. on the phone after his release from custody. So far as the record indicates, Father did not attend any in-person visits with D.W. prior to the disposition hearing, nor do we see any evidence that he attempted to have any such visits. Additionally, D.W., through counsel, expressed some resistance to reunifying with Father.

Considering the record as a whole, there is adequate evidence for the juvenile court's finding of detriment that precluded awarding custody of D.W. to Father.[3]

---

[3] Father argues the lack of an established relationship with a noncustodial parent, a child's desire to reside elsewhere, and sibling bonds are each insufficient to support a detriment finding. While precedent supports a view that any one of those factors would not automatically suffice to support a detriment finding, we do not rely on one factor alone in reaching our decision. Relying on *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1828 (*Marquis D.*), Father also argues the evidence was insufficient to support a detriment finding under section 361.2 because he had not committed any act "incompatible with parenthood." *Marquis D.*, however, does not establish that such an act is required for a court to find placement with a noncustodial parent would be detrimental under Welfare and Institutions Code section 361.2.

DISPOSITION

The juvenile court's order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



KIM, J.