Filed 2/20/26  E.M. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| E.M.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>SAN DIEGO COUNTY HEALTH and HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | D087097<br><br>(Super. Ct. Nos. J520189A-B) |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institution Code section 366.26 hearing.  Alexander M. Calero, Judge. Petition denied.

Dependency Legal Services of San Diego, Mary Livingstone; Los Angeles Dependency Lawyers, Inc. and Dominika Anna Campbell, for Petitioner.

No appearance for Respondent.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Real Party in Interest.

E.M. (Father) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order setting a hearing under Welfare and Institutions Code[1] section 336.26 for his minor children, D.M. and M.M. Father contends there is insufficient evidence to support the court's finding that there would be detriment to the children if they were placed in his care. We review the petition on the merits and deny it.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Prior Domestic Violence and Child Welfare History*

The parents have a history of domestic violence dating to 2017 when Father punched P.P. (Mother)[2] in the face, kicked her several times, and threatened to kill her. In 2019, then three-year-old D.M. witnessed a violent confrontation between his parents where Father pulled Mother's hair, punched her in the face, and kneed her in the stomach causing her to go into preterm labor with M.M. D.M. said, "I saw daddy push mommy" and asked, "Why are they fighting?" D.M. and infant M.M. were removed from their parents' care. Mother participated in reunification services and ultimately reunified with the children. Father fled and did not participate in any services.

II.

---

[1] All statutory references are the Welfare and Institutions Code.

[2] Mother is not a party to this appeal and will only be mentioned when necessary for context.

2

*The Agency's Section 300 Petition*

In July 2023, the San Diego County Health and Human Services Agency (Agency) received a report that M.M. had multiple injuries. At that time, Father was incarcerated while the children resided with Mother and her boyfriend.

The Agency learned Mother's boyfriend physically abused and tortured the children. He hit M.M. with a belt and fly swatter causing bruising and burned her skin with hot aloe vera. She had a healing rib fracture caused by forceful squeezing. D.M. was poked in the armpit with a hot lighter, hit with a belt, and his hair was ripped out. D.M. detailed the domestic violence he witnessed, including an incident where Mother's boyfriend hit M.M. so hard she defecated on herself. Mother initially denied physical abuse but later admitted her boyfriend harmed the children and herself. Her boyfriend was arrested after he admitted to the abuse. Mother obtained a restraining order protecting herself and the children from him.

In August 2023, the Agency filed a petition under section 300, subdivision (b) alleging the children were at risk of harm due to Mother's boyfriend's physical abuse, Mother's failure to protect the children, and their exposure to domestic violence. The juvenile court made a prima facie finding on the petition, removed the children from Mother's care, detained them with a relative, and ordered supervised visitation for the parents, and no contact with Mother's boyfriend.

Father participated in various programs while in custody. He admitted to a lengthy history of alcohol and drug use and domestic violence with Mother. He sent the children letters.

The juvenile court made a true finding on the petition, removed custody of the children from the parents, found detriment to place the children with

3

Father, and ordered reunification services and supervised visitation for the parents.

III.

*Reunification*

At the six-month review hearing in April 2024, Father remained incarcerated. He completed an anger management course and had supervised visits with the children. He had in-person visits while in local custody, which were appropriate, then moved to a different facility and reverted to virtual visits and phone calls.

Mother made significant progress in services and progressed to unsupervised visits with the children.

M.M. participated in a developmental evaluation which showed concerns with transitions and a history of trauma. She participated in therapy with the relative caregiver and made substantial progress.

D.M. struggled with aggressive behavior at home and at school. He began therapy to address past trauma.

At the 12-month review hearing in October 2024, the juvenile court placed the children in Mother's care and ordered family maintenance services to Mother and enhancement services to Father.

Although Father remained incarcerated, he completed a parenting program and had twice monthly in-person visits with the children, which were positive. In November 2024, he moved to a reentry facility where he was unable to have visits with the children. He was released from federal custody in January 2025 and referred to services.

D.M. told Father that Mother allowed him and M.M. around her boyfriend. They were driving and pulled over by law enforcement and the

4

boyfriend was arrested.  Father reported this to the social worker in March 2025.

Mother then admitted to the social worker she allowed the children around her boyfriend, characterized it as "no big deal," and subsequently dropped the restraining order protecting herself and the children from the boyfriend.

## IV.

### *The Agency's Section 387 Petition*

In April,[3] the Agency filed a section 387 petition alleging that placement with Mother was no longer appropriate given Mother violated the restraining order and allowed the children around her boyfriend.  The juvenile court made a prima facie finding on the petition, removed the children from Mother's care, detained the children in the home of the maternal uncle, and ordered supervised visitation for the parents.

At the May jurisdiction and disposition hearing, the Agency recommended the children be removed from Mother's care, placed in the care of a relative, reunification services be terminated for both parents, and a section 366.26 hearing be set.  The parents set the matter for trial on the issue of continued services and placement.

Meanwhile, Father was engaged in services, tested negative for all substances and had supervised visits with the children twice per week.  He reported continued participation in parenting classes and drug testing, which were the requirements of his probation.  He did not have a sponsor or begin the 12-step program, although he had been sober for two years.  He was residing in a converted garage in his niece's home and would not have space

---

3    All dates mentioned in this section discussing the section 387 petition are in 2025.

for the children. Father only visited the children once per week due to his work schedule and talked with them on the phone every other day. The visits were positive, Father was affectionate, and the children enjoyed the visits. He did not request additional visitation with the children until July 2025.

The children repeatedly told the social worker they did not want unsupervised contact with Father and occasionally did not want to attend visits with him. When asked if she enjoyed visits with Father, M.M. said, "[E]h, kind of." D.M. said he "sometimes" enjoyed visits with Father but that "it just doesn't feel safe for me." The maternal uncle explained Father was still a stranger to the children and that they needed more time to feel comfortable with him.

In August, the juvenile court granted the Agency's request to bifurcate the section 387 jurisdiction and dispositional trial. The court made a true finding on the petition and set disposition for trial.

In September, Father progressed to unsupervised visits with the children. The Agency attempted to provide housing referrals for him, but he was ineligible. He continued to participate in the case planning services and only visited the children once per week due to his work schedule. The children enjoyed the visits.

By October, D.M. reported he liked visiting Father but did not want to live with him. Neither child wanted visits at Father's home or overnight visits.

The Agency assessed that placement with Father was not appropriate. The Agency did not believe Father was ready to have the children returned to his care. He was still completing case plan services and not attending 12-step meetings and did not have a sponsor. The Agency wanted to see Father maintain sobriety without the oversight of probation. Father was not a

consistent part of the children's lives and was rebuilding his relationship with the children. The children did not want expanded visits with Father or to live with him. Father did not have housing for the children.

In October, the contested dispositional hearing on the section 387 petition took place. Father testified he was currently on county probation, was required to have a part-time job, attend a program, participate in the 52-week anger management course, and drug test. Father acknowledged the social worker encouraged him to visit the children twice weekly for two hours, but that he was unable to visit that often due to his work schedule. He visited them once or twice per week, depending on his work schedule, and on average spent three hours per week with them. He testified about the positive nature of his visits.

The social worker testified Father did not consistently visit the children, take advantage of the visits offered, or demonstrate the ability to parent the children. The children did not have the opportunity to build a relationship with him as he was not part of their day-to-day lives. Additionally, D.M. had underlying trauma because of his exposure to domestic violence, particularly between his parents. The social worker further testified Father used substances for 25 to 30 years and that she wanted to see Father maintain sobriety outside of a structured setting. Although she acknowledged the children were happy and loving during Father's visits, she nevertheless assessed that placement with Father would be detrimental to them.

The juvenile court accepted stipulated testimony of the children into evidence. They would testify to their interest in having overnight visitation with Father but wanted it limited to once per week.

The court removed custody from Mother and found the time for reunification services had expired. It then reviewed the family history and found placement with Father was not appropriate even though he participated in services and made attempts to rebuild his relationship with the children. Although "not determinative," the court also considered that the children did not want to live with Father. D.M. was concerned about being in Father's care despite the positive visits. The court noted Father had a demanding work schedule that limited the time he could spend with the children and had no care plan for them. It further considered Father's recent release from custody. It found by clear and convincing evidence that under section 361, subdivision (c)(1) the children should be removed from Father and under section 361.2, subdivision (a), it is not in the best interest to place the children with Father. It set a section 366.26 hearing.

Father subsequently filed a notice of intent to file a writ petition challenging the court's order setting the section 366.26 hearing. In December, we issued an order acknowledging that the notice was filed and stating that, if the writ petition was filed, the order would constitute an order to show cause why the relief requested should not be granted. Father then filed the writ petition and the Agency filed a response.

## DISCUSSION

### I.

### *Relevant Legal Principles*

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) A supplemental petition "need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile

8

court jurisdiction already exists. [Citations.] The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child." (*Ibid.*)

Section 361.2, subdivision (a) provides that, when the juvenile court removes a dependent child from a custodial parent, the court "shall first determine" whether there is a noncustodial parent who wants custody of the child and was not residing with the child at the time the events that brought the minor within the provisions of section 300 occurred. (§ 361.2, subd. (a).) If so, the court "shall place" the child with the parent unless "it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (*Ibid.*)

We review the juvenile court's findings on a section 387 petition for substantial evidence. (*In re T.W., supra*, 214 Cal.App.4th at p. 1161.) "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*Id.* at pp. 1161–1162.)

## II.

### *Substantial Evidence Supports the Court's Detriment Finding*

Applying the law to the facts, we perceive no error as the court had ample evidence to support its detriment finding by the clear and convincing standard under section 361, subdivision (c)(1). It first properly considered the entire dependency context, including Father's history of domestic violence dating back to 2017. When D.M. was one year old, Father punched Mother in

the face, said he would kill her and then, as Mother recalled, he nearly killed her. Two years later, D.M. witnessed Father pull his mother's hair, punch her in the face, scratch her neck, and kick her in the stomach while she was pregnant with M.M. The Agency initiated a dependency case and the children were removed from their parents' care. Father did not engage in services but instead fled and had no contact with his children for three and one-half years.

While he was absent, the children were exposed to domestic violence between Mother and her boyfriend and were physically abused and tortured by her boyfriend. In August 2023, while Father was incarcerated, the children were again removed from Mother's care. She regained custody in September 2024, but the children were removed again in April 2025 after she allowed her boyfriend around the children in violation of a restraining order. The social worker testified it would be a detriment to place them in Father's care, based partially upon the "underlying trauma from experiencing the things" D.M. saw including "horrific, violent acts" between his parents who were "supposed to protect him and keep him safe."

Consistent with the argument in Father's petition, the court acknowledged the children "enjoy their time with him." Even so, the court nevertheless found it was "too soon to place them back in his care." Father likewise testified, "I don't think that they trust me a hundred percent yet, like, to be living with me." He also acknowledged the domestic violence between him and Mother "affected them greatly." D.M. "suffers from anxiety" and "struggled a lot because he . . . was fearful after hearing me yell and because of the violence that . . . I engaged in that he witnessed." He testified, "I haven't had enough time to spend with them and to show them that I have really changed, and that I am really interested in their well-

10

being." The social worker similarly testified the children did not have the opportunity to build a relationship with Father and this was a factor in her opinion that placement with Father would be detrimental. This was true despite there not being safety concerns with visits and the positive nature of visits.

The juvenile court also considered the children's placement preferences, including the evidence they were reluctant to expand visitation with Father. They told Father they wanted to remain living with the maternal uncle and Father testified, "I want . . . what is best for them. And if what is best for them is living with their uncle, if that's what they want, I would support them in that." The court appropriately "considered" their wishes but expressly noted they were "not determinative." (See, e.g., *In re C.M.* (2014) 232 Cal.App.4th 1394, 1402 ["the child's wishes . . . may be considered by the juvenile court . . . ."].)

The juvenile court further noted Father had a demanding work schedule that limited his ability to spend time with the children and had no care plan for them. Father testified, "I don't have the living condition for them to live well with me" and his room was "too small for them to be there." He acknowledged it was best for them to keep living with their uncle who "is basically the one who provides everything for them." The social worker testified it would be detrimental to place them with Father in part due to his inability to meet their needs. Although not dispositive, the court considered this along with the children's history of exposure to domestic violence, the trauma they endured, multiple removals from parental care, Father's recent release from long-term incarceration and their recent relationship with him, and their expressed wish to remain with maternal uncle. This was

11

substantial evidence supporting the court's order that D.M. and M.M. would face detriment if placed in Father's care.

DISPOSITION

The petition for extraordinary writ is denied.  The decision is final in this court immediately.  (California Rules of Court, rules 8.452(i) & 8.490(b)(2)(A).)

KELETY, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.